Leah T. Handelman
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
lthandelman@garlington.com


Attorneys for Plaintiff


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> WHEELER FARMING OPERATIONS, LLC, <br><br> Defendant. | Cause No.: CV-24-115-GF-JTJ <br><br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Nationwide Agribusiness Insurance Company ("NAIC"), by and through its counsel, Garlington, Lohn & Robinson, PLLP, for its Complaint for Declaratory Judgment, states and alleges as follows:

## I.    PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff NAIC is an insurance company organized and existing under the laws of the State of Iowa with its principal place of business in Des Moines, Iowa.  NAIC is authorized to conduct business in Montana.

2.      Defendant Wheeler Farming Operations, LLC ("Wheeler") is a Montana limited liability company organized under Montana law with its principal place of business in Valier, Pondera County, Montana.

3.      NAIC issued a Farm Owners Policy to Wheeler, the Named Insured, bearing policy number FPK FMPN 3027995995 and with a policy period from November 4, 2018 to November 4, 2019 ("Policy").  A true and correct copy of the Policy is attached as Exhibit A, with premium information redacted ("Ex. A").

4.      Wheeler has demanded coverage under the Policy for claims brought against it by Brendon Hodgson, Stephen Vincent Sanders II, and Joe Russell (collectively "Underlying Plaintiffs") in an action styled:  *Hodgson et al. v. Custom Crop Care, Inc. et al.*, Montana Ninth Judicial District Court, Pondera County, Cause No. DV-22-32 ("Underlying Action").

5.      Plaintiffs in the Underlying Action seek compensatory, special, and punitive damages in excess of $75,000.00 in the Underlying Action.

6.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and NAIC and Wheeler are citizens of different states.

7.      Venue is proper in the Great Falls Division of the District of Montana as Wheeler's principal place of business is in Pondera County, the events giving rise to the Underlying Action occurred in Pondera County, and any judgment against Wheeler will be obtained in Pondera County pursuant to the Underlying Action further described below.

## II.      GENERAL ALLEGATIONS

8.      The parties' rights and obligations under the Policy, specifically whether NAIC has a duty to defend or indemnify Wheeler on the claims alleged against it in the Underlying Action, is the subject of this action.

## A.      The Underlying Action

9.      On August 22, 2022, Underlying Plaintiffs filed a Complaint and Jury Demand against Wheeler, Custom Crop Care Inc. ("Custom Crop Care"), Helena Agri-Enterprises, LLC d/b/a Helena Chemical ("Helena Chemical"), Brandon Phillips, Michelle VanDyken, William H. McKinley, and "Does 1-15" (the "Underlying Complaint").  A true and correct copy of the Underlying Complaint is attached as Exhibit B ("Ex. B").

10.    The allegations in the Underlying Complaint can be summarized as follows:  Plaintiffs have a joint venture to plant and harvest a hemp crop for production of hemp oil to be used for the manufacturing of CBD products sold at retail to the general public.  The crop was planted on farmland owned by Underlying Plaintiff Russell.  According to the Underlying Complaint, the hemp crop was planted on approximately160 acres of Underlying Plaintiff Russell's farmland in June of 2019 and was allegedly expected to yield 3 tons per acre, which would be processed into approximately 63.56 kilograms of hemp oil per ton of crop.  Underlying Plaintiff Russell's farm allegedly abutted farmland owned by Wheeler that had been planted with wheat.  Wheeler allegedly hired Custom Crop Care to apply herbicide to the wheat crop as part of a pre-harvest burn down.

The Underlying Complaint alleges that Underlying Defendant Phillips, while in the course and scope of his employment with Custom Crop Care, applied RT 3 herbicide in three separate applications using a large boom sprayer on August 31, September 1, and September 2, of 2019.  RT3 is allegedly a glyphosate-based herbicide manufactured by Bayer CropScience and sold as part of its Roundup brand of products.  RT 3 is allegedly approved for certain applications on certain crops, including wheat, but is not approved on the product label or by the United States Environmental Protection Agency for use on hemp.  The Underlying Complaint further alleges that RT 3 is "especially potent" and targets ESPS

synthase as its site of action to kill weeds.  It is allegedly well-known in the farming and pesticide application industries that RT 3 and other glyphosate-based herbicides should not be used on industrial hemp because it is classified as a weed and highly vulnerable to those types of herbicides.

According to the Underlying Complaint, the RT 3 product applied to Wheeler's property by Phillips was applied in a negligent manner that allowed the product to drift onto Plaintiff Russell's land and contaminate the crop.  As a result, the Underlying Complaint alleges that Underlying Defendants are jointly and liable for Plaintiffs' damages by:

- selecting an improper herbicide product not labeled for use in the intended application and/or not appropriate for the application in the manner it was used;

- selecting improper application equipment and techniques that increased the risk of drift onto adjoining property; and

- applying herbicide in manner that allowed it to drift onto adjacent property, including failing to use drift reduction additives or an insufficient amount; failing to select proper nozzles on the boom sprayer to avoid generating a fine mist that was more likely to drift; failing to account for conditions that made drift more likely including wind direction and speed; and failing to account for other factors like natural terrain and proximity of the hemp crop to the application site.

Underlying Plaintiffs allegedly filed a complaint with the Montana Department of Agriculture, which investigated the matter and concluded that Phillips' herbicide application constitutes misused and violation of Montana law.

As a result, the Underlying Complaint alleges that Defendants' actions resulted in confirmed glyphosate contamination of Plaintiffs' hemp crop which rendered the entire crop unsuitable and unmerchantable for the production of high-quality hemp oil to be used in CBD products. The Complaint alleges that at the time, the wholesale value of hemp oil was approximately $4,000 per kilogram and that the whole hemp crop would have produced 3,508.8 kilos which total a wholesale value of $122,035,200.00, not including any profit from sales of CBD, which allegedly would have been greater.

11.    The Underlying Complaint alleges four specific causes of action.

12.    Count I of the Underlying Complaint is for Strict Liability and alleges that the widescale application of pesticides and herbicides like RT 3 to large areas of land is an ultrahazardous and abnormally dangerous activity that subjects defendants to strict liability for all injuries that are a natural consequence of that activity.

13.    Count II is for Negligence *Per Se* and alleges that the Montana Pesticides Act, Montana Code Annotated §§ 80-8-101 et seq. governs application of pesticides and herbicides like RT 3 and is intended to regulate landowners and applicators like Defendants. The purpose is allegedly to protect neighboring landowners and crop owners from recognized and substantial harmful effects of pesticide/herbicide misuse. Defendants violated these statutory provisions, which

allegedly was established as a matter of law in the MDA's findings and caused Plaintiffs' damages.

14.     Count III is for Common Law Negligence and alleges that herbicides like RT 3 are strictly controlled as matter of public safety and pose a peculiar risk of harm.  This Count further alleges that the application thereof is an inherently and abnormally dangerous activity.  In authorizing and conducting the application of RT 3, Defendants were allegedly charged with non-delegable duties and a heightened standard of care.  Alternatively, Defendants had a duty of ordinary care under the applicable standards in the industry and breached those duties in their negligent conduct in the application, which resulted in the contamination and destruction of Plaintiffs' crop and corresponding economic injuries.

15.     Count IV is for Piercing the Corporate Veil and Fraudulent Transfer and against Underlying Defendants Helena Chemical, Custom Crop Care, VanDyken and McKinley.

16.     Count V of the Complaint is for Punitive Damages and alleges that Underlying Defendants acted in conscious or intentional disregard or with indifference to the high probability of injury to Plaintiffs.  This Count further alleges that Defendants knew about the hemp crop grown on Plaintiff Russell's adjacent farmland, that RT 3 was not appropriate or approved for the use on the hemp crop, that the hemp crop would be contaminated and destroyed by exposure

to RT 3, and that the conditions and methods in which it was applied were improper. As a result, Underlying Plaintiffs allege that Underlying Defendants are liable for exemplary and punitive damages pursuant to Mont. Code Ann. § 27-1-221.

17.    Wheeler was served with the Underlying Complaint in November 2022. Wheeler did not notify NAIC of the Underlying Action until October 2024, after an order of default was entered against him. Wheeler, through counsel, however, was successful in having the default set-aside.

18.    NAIC issued a reservation of rights letter to Wheeler on November 6, 2024, and a supplemental reservation of rights letter to Wheeler on November 8, 2024, under which it agreed to provide Wheeler with a defense for the allegations in the Underlying Action under a complete reservation of rights. A true and correct copy of the reservation of rights letters are attached as Exhibit C ("Ex. C").

**B.    Relevant Policy Provisions**

19.    The Policy contains Farm Liability Coverage Form FL 700 20 07 12, which sets forth the Policy's Bodily Injury and Property Damage Liability under Coverage H as follows:

A.    **COVERAGES**

**COVERAGE H - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **INSURING AGREEMENT**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend any insured against any claim or "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any incidents and settle any claim or "suit" that may result. . .

. . .

b.    This insurance applies to "bodily injury" and "property damage" only if:

1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

2)    The "bodily injury" or "property damage" first occurs during the policy period;

3)    The "bodily injury" or "property damage" arises out of "personal activities" or out of operations usual or incidental to "farming", . . .

Ex. A at 62.

20.    Coverage H is subject to the following relevant exclusions:

2.    **EXCLUSIONS**

This insurance does not apply to:

a.    **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended from the standpoint of any insured even if the resulting "bodily injury" or "property damage":

1)   Is of a different kind, quality or degree than initially expected or intended; or

2)   Is sustained by a different person, organization, real property or personal property than that initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

i.   **Pollution**

1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants";

a)   At or from any premises, site or location which is or was at any time occupied by, or rented or loaned to, managed or controlled by any insured.  However, this subparagraph, 1) a), does not apply to:

i.   "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

ii.  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your on going operations performed for that additional insured at that premises, site or location and such premises, site or location is not

and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured;

iii.    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

iv.    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a fire set in the normal and usual "farming" practices of burning off crop stubble and other vegetation, provided such practices are not in violation of any ordinance, law or regulation.

d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

i.    "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or

release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

ii.   "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

iii.  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

iv.   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a fire set in the normal and usual "farming" practices of burning off crop stubble and other vegetation, provided such practices are not in violation of any ordinance, law or regulation.

2)   Any loss, cost or expense arising out of any:

a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

b)   Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up,

removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

This entire paragraph i.2) applies whether the "pollutants" are applied or released upon crops, soil, land, air or water; whether the "pollutants" are applied or released intentionally or accidentally; and regardless of the number of persons injured or the amount of property damaged.

However, this paragraph does not apply to liability for damages because of "property damage" that any insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

. . .

s.    **Rental Of Premises And Ownership Or Control Of Premises**

"Bodily injury" or "property damage" arising out of:

1)    Any real property or premises that is not an "insured location"; or

2)    An act or omission in connection with any location, other than an "insured location", that is rented or leased to, rented or leased by, owned or occupied by, or managed or controlled by any insured.

The only exception to this exclusion are in "occurrences" of "bodily injury" or "property damage" sustained by a "residence employee" arising out of and in the course of employment by the insured.

3)    The rental or holding for rental of an "insured location"

This exclusion does not apply to:

a)      The rental of a farm premises shown in the Declarations, provided the premises is rented for "farming" purposes and the rental commences during the present annual policy period;

b)      The rental of a farm premises acquired during the present annual policy period, provided the rental is for "farming" purposes;

c)      The rental of a residence for residential purposes, provided:

     i)      The residence is located on a farm premises used for "farming" purposes; and

     ii)      Such farm premises is shown in the Declarations or acquired during the present annual policy period; and

     iii)      The rental commences during the present annual policy period;

d)      The occupancy of a part of your principal residence as:

     i.      Living quarters, by no more than two roomers or boarders; or

     ii.      An office, school, studio or private garage; or

e)      The occasional occupancy of your principal residence by persons using the residence exclusively as living quarters.

. . .

This exclusion does not apply to the occasional short-term rental of facilities by any insured for such events as graduation and wedding receptions, or for your "custom farming" or "farm management" operations.

. . .

w.    **Damage To Property**

"Property damage" to:

. . .

6)    That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the "property damage" arises out of those operations; or

Ex. A at 63-78.

21.    The Farm Liability Coverage Form also provides the following pertinent Additional Coverage:

B.    **ADDITIONAL COVERAGES**

. . .

2.    **Damage To Property Of Others**

a.    We will pay up to $2,500 per "occurrence" for "property damage" to property of others caused by an insured.

At our option, we will either:

1)    Pay the actual cash value of the property; or

2)    Repair or replace the property with other property of like kind and quality.

b.    But we will not pay for "property damage":

1)    Caused intentionally by an insured who is 13 years of age or older;

2)    To property owned by or rented to an insured, a tenant of an insured, or a member of your household; or

3)    Arising out of:

a)    Professional services, or a "business" engaged in by any insured;

        b)      An act or omission in connection with any premises (other than an "insured location") that are owned, rented or controlled by an insured; or

        c)      The ownership, maintenance, operation, use or "loading or unloading" of any "auto", motorcycle, motorized bicycle or tricycle, "recreational vehicle", "mobile equipment", aircraft or watercraft.

No other obligation to pay sums or perform acts or services is covered.

Ex. A at 78.

22.     The Farm Liability Coverage Form describes Who Is An Insured, in

pertinent part, as follows:

**C.    WHO IS AN INSURED**

    1.     If you are designated in the Declarations as:

. . .

       c.     A limited liability company, you are an insured. . . .

. . .

    6.     Any person using a "recreational vehicle" or "mobile equipment" on the "insured location" with your consent is an insured provided this insurance applies to the "recreational vehicle" or "mobile equipment." No person is an insured with respect to the use of an "auto."

Ex. A at 80.

23.     The Farm Liability Coverage Form also contains the following relevant

definitions:

F.    **DEFINITIONS**

. . .

4.    **"Business"** means a trade, profession, occupation, enterprise or activity other than "farming", which is engaged in for the purpose of monetary compensation or other compensation.

. . .

12.    **"Farming"** means the operation of an agricultural or aquacultural enterprise and includes the operation of roadside stands on your farm premises, maintained solely for the sale of farm products produced principally by you.  Unless specifically indicated in the Declarations, "farming" does not include:

a.    Retail activity other than that described above; or

b.    Mechanized processing operations.

Sales from "farming" operations are primarily wholesale as opposed to retail. Retail marketing is limited to incidental sales of your unprocessed farm product sold by you with the resulting gross income being a minor portion of your combined "farming" gross income.

. . .

17.    **"Insured location"** means:

a.    The farm premises (including grounds and private approaches) and "residence premises" shown in the Declarations;[1]

b.    The part of other premises, or of other structures and grounds, that is used by you as a residence and:

1)    Shown in the Declarations; or

2)    Acquired by you during the present annual policy period for your use as a residence;

c.    Premises used by you in conjunction with the premises included in a. or b. above;

---

[1] The Insured location identified in the Declarations is 2293 N. Price Road, Ledger, Montana 59456 (Toole County).

    d.    Any part of premises not owned by any insured but where an insured is temporarily residing;

    e.    Vacant land owned by or rented to an insured;

    f.    Land, owned by or rented to an insured, on which:

        1)    A dwelling is being constructed for occupancy by an insured, or by an insured's "farm employees" or "residence employees"; or

        2)    A building or structure is being constructed for use of an insured in "farming" operations.

    g.    Individual or family cemetery plots or burial vaults of an insured;

    h.    Any part of premises occasionally rented to any insured for other than "business" purposes; and

    i.    Any farm premises (including its grounds and private approaches) that you or your spouse acquire during the present annual policy period.

. . .

20.    **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

    a.    Bulldozers, forklifts, farm machinery, farm implements and other vehicles designed for use or used principally off public roads. This includes motorized golf carts, snowmobiles and other land vehicles designed for recreational use when used for "farming" purposes on an "insured location."

. . .

    e.    Vehicles not described in Paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

2)      Cherry pickers and similar devices used to raise or lower workers

. . .

22.    **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

25.    **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant including but not limited to pesticides, herbicides, insecticides, agricultural dust, smoke, vapor, soot, fumes or odors, acids, alkalis, petroleum products and their derivatives, chemicals (including those applied or intended for application to soil, crops, water or livestock) and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your operations, premises, sites or locations, and whether they are applied or released intentionally or by accident. Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

. . .

28.    **"Property damage"** means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purpose of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media, which are used with electronically controlled equipment.

. . .

Ex. A at 85-90.

24.     Other provisions, conditions, or exclusions in the Policy may also limit or

preclude NAIC's obligations under the circumstances presented.

### III.    COUNT I – DECLARATORY JUDGMENT – COVERAGE H

25.     NAIC repleads and incorporates by reference Paragraphs 1-24 above.

26.     NAIC has no duty to defend or indemnify Wheeler in the Underlying

Action, in whole or in part, due to one or all of the following reasons:

    a.      RT 3 is an herbicide and therefore a "pollutant" under the Policy.

Thus, Exclusion i. – Pollution precludes coverage under Coverage H for all or

some of the allegations against Wheeler in the Underlying Action.

    b.      Exclusion w.6), which precludes coverage for "property damage"

to that particular part of real property on which any insured or any contractors or

subcontractor working directly or indirectly on any insured's behalf are performing

operations if the "property damage" arises out of those operations, precludes

coverage under Coverage H for all or some of the allegations against Wheeler in

the Underlying Action.

    c.      The Policy does not expressly exclude coverage for punitive

damages, and therefore coverage for such damages is not available under Montana

Code Annotated § 33-15-317(1).

## II.     COUNT II – DECLARATORY JUDGMENT – ADDITIONAL COVERAGES

27.     NAIC repleads and incorporates by reference Paragraphs 1-26 above.

28.     To the extent the Additional Coverage for Damage to Property of Others applies, the limit for such coverage is $2,500 and any duty to defend by NAIC pursuant to that coverage will be extinguished if and when such limits are paid.

Other facts and circumstances documented during this proceeding may further limit NAIC's duty to defend or indemnify Wheeler.

## IV.     PRAYER FOR RELIEF

**WHEREFORE,** NAIC requests the following relief:

1.     For Count I for Declaratory Judgment, a judicial declaration that NAIC has no duty to defend or indemnify Wheeler, in whole or in part, in connection with the Underlying Action.

2.     For Count II for Declaratory Judgment, a judicial declaration that any duty to defend by NAIC under the Additional Coverage for Damage to Property of Others extinguishes if and when the $2,500 limit applicable to that coverage is paid.

3.     For such other relief as the Court deems just.

DATED this 18th day of December, 2024.

_____/s/  Leah T. Handelman_____
                  Attorneys for Plaintiff